Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4765 | **DATE** | 9/21/2004 |
| **CASE TITLE** | LIBERTY MUTUAL INSURANCE COMPANY vs. TOKIO MARINE AND FIRE INSURANCE CO | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court denies Tokio's motion to strike [doc. no. 35], denies Liberty's motion for summary judgment [doc. no. 22], and grants Tokio's motion for summary judgment [doc. no. 24]. This case is hereby terminated. Any pending motions or schedules are stricken as moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | SEP 22 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 45 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| CG | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) TOKIO MARINE AND FIRE INSURANCE COMPANY, LIMITED, ) ) ) Defendant. ) | Judge Ronald A. Guzmán<br><br>03 C 4765 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Liberty Mutual Insurance Co. ("Liberty") brought this action for declaratory judgment against Defendant Tokio Marine and Fire Insurance Co., Ltd. ("Tokio") to determine their respective obligations to provide indemnity in the settlement of a lawsuit brought against E.W. Howell Co., Inc. ("Howell") and Sanyo North American Corporation ("Sanyo"). Liberty and Tokio have made cross motions for summary judgment. Tokio has also moved to strike references to (1) Exhibit 1 to Liberty's Response to Tokio's Statement of Facts in Support of Its Motion for Summary Judgment and (2) the April 22, 2004 affidavit of Peter Jushka and its supporting documents. For the reasons set forth below, the Court: (1) denies Liberty's motion for summary judgment; (2) grants Tokio's motion for summary judgment; and (3) denies Tokio's motions to strike as moot.

### I. TOKIO'S MOTIONS TO STRIKE

Exhibit 1 to Liberty's Response to Tokio's Statement of Facts in Support of Its Motion

for Summary Judgment is a letter dated August 22, 2001, apparently sent by Mark FitzGerald, a representative of Tokio, to William Hare, a lawyer for Howell and Sanyo. Tokio moved to strike the letter, arguing that it cannot be used to support Liberty's Statement of Facts under Local Rule 56.1 because it is not verified by a sworn statement or affidavit. (Tokio's Reply Supp. Mot. Summ. J. at 1-2.) Liberty attached an affidavit from its representative, Peter Jushka, to its Response to Tokio's Motion to Strike; in the affidavit Mr. Jushka states that he received a letter from an attorney for Tokio that referred to the August 22, 2001 letter and enclosed a copy of it. (Liberty's Resp. Tokio's Mot. Strike, Ex. A, Jushka Aff. of 4/22/04 ¶¶ 9-10.) Liberty also introduced four other documents attached to the affidavit: the settlement agreement in the underlying case; the checks paid pursuant to the agreement; a November 29, 1995 letter from Tokio's, Howell's, and Sanyo's attorney to Liberty, enclosing copies of portions of the Liberty certificate of insurance to which Howell and Sanyo were made additional insureds; and the settlement petition and order for the worker's compensation claim in the underlying case. Tokio has moved to strike this affidavit and its attached documents, arguing (1) the affidavit contradicts Mr. Jushka's deposition testimony; (2) the documents were not identified in Liberty's Rule 26 disclosures; and (3) the worker's compensation settlement was negotiated in bad faith. (Reply Supp. Tokio's Mot. Strike ¶¶ 3-11.) Although Liberty argues that the motion to strike Mr. Jushka's affidavit is untimely because Tokio allowed a month to elapse, the Court can find no authority stating that the passage of a month is too long to raise an objection, and Liberty cites none. The Court will address the motion on its merits.

Tokio does not point to any deposition testimony or affidavit denying that its representative wrote and sent the August 22, 2001 letter. Even if a document is not properly

authenticated, a party is not acting in good faith in raising an objection if the party knows that the document is nevertheless authentic. *Fenje v. Feld*, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003). Nonetheless, Tokio correctly points out that documents submitted to support or defeat a summary judgment motion must be authenticated to be admissible. *Scott v. Edinburg*, 346 F.3d 752, 759-61 (7th Cir. 2003). The Court will address Tokio's objections.

Authentication "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). Liberty argues that the letter is "self-authenticating" because it was prepared by the opposing party. However, the letter does not fall within any category of self-authenticating documents enumerated in the Federal Rules of Evidence. *See* FED. R. EVID. 902. Though Liberty does not cite to any cases to support its argument, it seems to have in mind the rule that documents produced by an opponent during discovery may be treated as authentic. *E.g., Fenje*, 301 F. Supp. 2d at 809 (citing *Int'l Paper Co. v. Androscoggin Energy LLC*, No. 00 C 6215, 2002 WL 31155069 at *2 (N.D. Ill. Sept. 26, 2002)). That rule is inapplicable here because the letter was produced by Liberty, not Tokio.

Liberty next attempts to authenticate the letter with an affidavit from its claims representative, Peter Jushka. Mr. Jushka's affidavit states that the August 22, 2001 letter was enclosed in a letter to him from Timothy M. Thornton, Jr., an attorney for Tokio. (Liberty's Resp. Tokio's Mot. Strike, Ex. A, Jushka Aff. of 4/22/04 ¶¶ 9-10.) Despite the customary preface to his affidavit claiming personal knowledge of all facts set forth, Mr. Jushka does not state any facts such as would be required by Federal Rule of Civil Procedure 56(e) to establish that he has personal knowledge that the letter purporting to be from Mr. Thornton is authentic. He does not state, for example, that he was present when the letter was written, that he spoke to

3

or communicated with Mr. Thornton in any way about the letter, that he was familiar with Mr. Thornton's signature, or that the letter was a reply to a letter he himself wrote to Mr. Thornton and that it made reference to privileged information contained therein. The affidavit is insufficient to authenticate Mr. Thornton's letter. *See Morrow v. Wal-Mart Stores*, 152 F.3d 559, 563 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'") (quoting *Hadley v. Co. of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983)). The Court need not determine whether Mr. Thornton's letter is sufficient to qualify as a party admission that the August 22, 2001 letter is authentic; neither letter is admissible. Nonetheless, it is unnecessary to strike references to the August 22, 2001 letter or the letter from Mr. Thornton; to the extent any statement is not adequately supported, it will not be incorporated into the facts taken as true for the purpose of ruling on the motions for summary judgment. *See Fenje*, 301 F. Supp. 2d at 789; *Ogborn v. United Food & Commercial Workers, Local No. 881*, No. 98 C 4623, 2000 WL 1409855, at *3 (N.D. Ill. Sept. 25, 2000).

Tokio seeks to strike the April 22, 2004 affidavit of Peter Jushka because it contains statements that Tokio alleges are in conflict with Mr. Jushka's deposition. In his February 11, 2004 deposition, Mr. Jushka replied in the affirmative to Tokio's question as to whether when he settled the claim of Mr. Adamczewski and his wife, he had an understanding that the settlement would relieve the liability of Howell, Sanyo, and Tiffiny. (Tokio's LR 56.1(b)(3)(A) Stmt., Ex.

4

1, Jushka Dep. at 177.)[1] Mr. Jushka also stated that he did not know at the time of the deposition what damages Liberty attributed to Sanyo, Howell, and Tiffiny. (*Id.* at 52.)[2] Later in the deposition, in response to a question from Liberty, Mr. Jushka stated that Liberty paid $1.2 million off of its policies "to settle the claims of Howell and Sanyo who were the named defendants in the lawsuit." (*Id.* at 230.) Tokio objected to the question, pointing out that Mr. Jushka had already said he did not know whether the $1,200,000 was paid on behalf of Howell and Sanyo. (*Id.* at 229-30.) Liberty terminated the deposition shortly thereafter. In an affidavit taken the same day, Mr. Jushka stated that Liberty paid its limits of $1,000,000 under Liberty's primary policy and $200,000 under Liberty's excess policy on behalf of Howell and Sanyo in connection with the settlement of the Adamczeski suit. (Liberty's LR 56.1(a)(3) Stmt., Ex. G, Jushka Aff. of 2/11/04 ¶¶ 5-6.) This accords with Mr. Jushka's April 22, 2004 affidavit, in which he stated: "Liberty Mutual paid a total of $1,200,000 on behalf of its insureds Howell and Sanyo to settle the Adamczewski lawsuit." (Liberty's Resp. Tokio's Mot. Strike, Ex. A, Jushka Aff. of 4/22/04 ¶ 5.)

As Tokio correctly points out, affidavits cannot be used to correct embarrassing

---

[1] Liberty had objected that the question called for a legal conclusion, in response to which Tokio rephrased to limit the question to Mr. Jushka's understanding. (Tokio's LR 56.1(b)(3)(A) Stmt., Ex. 1, Jushka Dep. at 177.)

[2] Liberty objected to the question on four grounds: form, relevance, calls for speculation, and assumes facts not in evidence. (Tokio's LR 56.1(b)(3)(A) Stmt., Ex. 1, Jushka Dep. at 52.) However, the question was relevant in order to determine whether the limits of Liberty's primary policy had been reached, the question is not compound or misleading, and it is addressed to the personal knowledge of Mr. Jushka. Insofar as Tiffiny was a named insured to the Liberty policies and Mr. Adamczewski was Tiffiny's employee, it was fair for Tokio to assume that Mr. Jushka may have considered whether any damages should be attributed to Tiffiny in settling the claim.

deposition testimony; to the extent they are in conflict with prior sworn testimony, affidavits must be disregarded. *See Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1056 (7th Cir. 2000). Mr. Jushka stated in his deposition that it was his understanding that the $1,200,000 settlement relieved the liability of Tiffiny as well as Howell and Sanyo. There is nothing in his affidavits that explains why he contradicts this testimony. Mr. Jushka does not explain, for example, that upon review of his claim notes, he can clarify his earlier confusion. In fact, the settlement agreement attached to the April 22, 2004 affidavit, to which Mr. Jushka refers in support of his statement that the settlement was paid on behalf of Howell and Sanyo, addresses not only the lawsuit against Howell and Sanyo, but the worker's compensation claim brought against Tiffiny. (Liberty's Resp. Mot. Strike, Ex. A, Jushka Aff. of 4/22/04, Ex. 1, Settlement Agreement and Release of 11/3/01 ¶¶ A-C.) The agreement states that the plaintiffs will dismiss the worker's compensation claim for a contract reciting $1.00 consideration. (*Id.* ¶ 1.) Tiffiny and its insurer agreed to pay certain of the plaintiff's medical expenses "[a]s a further part of this agreement." (*Id.*) It is not clear whether dismissal of the worker's compensation claim was exchanged for payment of the medical expenses as a further–and separate–part of the agreement to dismiss the lawsuit in exchange for $1,200,000, or whether the payment of the medical expenses is a further part of the agreement to dismiss the lawsuit and worker's compensation claim in exchange for $1,200,000. (*Id.*) It is therefore not clear whether some part of the $1,200,000 was in fact paid on behalf of Tiffiny under the worker's compensation insurance issued by Liberty. (Liberty's LR 56.1(a)(3) Stmt., Ex. E, Policy TH1-141-403362-0339 at 2.) The settlement agreement cannot support Mr. Jushka's statement that the $1,200,000 was paid on behalf of Howell and Sanyo, and the affidavits cannot be used to contradict Mr. Jushka's deposition testimony.

Reliance on the settlement agreement may also be barred by procedural objections. Tokio argues that the documents attached to Mr. Jushka's affidavit cannot be admitted because they were not included in Liberty's Rule 26 disclosures. Rule 26 provides in relevant part:

> [A] party must, without awaiting a discovery request, provide to other parties: . . . a copy of, or description by category and location of, all documents . . . that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment . . . A party is under a duty to supplement at appropriate intervals its disclosures . . . if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.

FED. R. CIV. P. 26(a)(1)(B), (e)(1). Information that without substantial justification is not disclosed as required by Rule 26(a) or (e) may not, unless such failure is harmless, be used as evidence on a motion. FED. R. CIV. P. 37(c)(1). Rule 26(e) applies regardless of whether discovery has closed. *Episcopo v. Gen. Motors Corp.*, No. 02 C 8675, 2004 WL 628243, at *7 (N.D. Ill. Mar. 29, 2004). Where a party failed to produce a document during the discovery process, it is proper for a court to refuse to consider it on motion for summary judgment. *Id.* The purpose of Rule 26 is to prevent any unfair, prejudicial surprise. *Scranton Gillette Communications, Inc. v. Dannhausen*, No. 96 C 8353, 1998 WL 566668, at *2 (N.D. Ill. Aug. 26, 1998). Liberty argues that disclosure of the documents during discovery was not required by Rule 26 because they address issues raised for the first time by Tokio in the motions for summary judgment. (Liberty's Resp. Tokio's Reply Supp. Mot. Strike at 3-4.) Liberty also argues that these documents fall within the Rule 26 exception for documents used solely for impeachment. (*Id.* at 4.) With regard to the settlement agreements and checks, the argument is not persuasive. It is essential to Liberty's claim that Liberty prove the limits of its primary policy were exceeded,

7

and Tokio does not raise a new issue by contending that Liberty has not met its burden. The settlement agreement and checks should have been identified during discovery, and they cannot be relied upon to support Liberty's claim now.

The remaining document attached to Mr. Jushka's affidavit is a November 29, 1995 letter from Donna Kajsta, legal assistant to Robert C. Moore, an attorney for Tokio, Howell, and Sanyo, to Bob Klesta, a representative of Liberty. Liberty attaches the November 29, 1995 letter and enclosures to support its denial of Tokio's assertion that under the contract between Howell and Tiffiny, Howell and Sanyo were named additional insureds on $4,000,000 of primary coverage issued to Tiffiny. (Liberty's Resp. Tokio's LR 56.1(b)(3)(B) ¶¶ 4-5.) The exhibit is intended to show that Howell was aware that the Liberty insurance policy provided only $1 million of primary coverage. (*Id.* ¶ 5.) Insofar as Tokio argues that Howell was unaware of the insurance policy, the letter may be used for impeachment, in accordance with Rule 26. FED. R. CIV. P. 26(a)(1)(B).

In sum, the motions to strike (1) references to Exhibit 1 of Liberty's Response to Tokio's Statements of Facts in Support of Its Motion for Summary Judgment (the August 22, 2001 letter from Mark FitzGerald) and (2) the April 22, 2004 affidavit of Peter Jushka and its supporting documents are denied. However, the documents to which Tokio objects, and any references to them, will not be considered in ruling on the motions for summary judgment except insofar as the November 29, 1995 letter attached to Mr. Jushka's April 22, 2004 affidavit may be necessary for impeachment.

## II. CROSS MOTIONS FOR SUMMARY JUDGMENT

On February 20, 2004, Liberty and Tokio filed cross motions for summary judgment

pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 56.1 of the Local Rules of the United States District Court for the Northern District of Illinois.

## FACTS

The following facts are either undisputed or deemed admitted due to the party's failure to comply with LR 56.1, which this Court strictly enforces. In March 1994, Howell had been retained by Sanyo to construct a building. (Tokio's LR 56.1(a)(3) ¶ 2.) At that time, Tiffiny was performing certain work on the Sanyo construction project under a subcontract between Tiffiny and Howell. (*Id.* ¶ 3.) The subcontract required that Tiffiny obtain commercial general liability insurance coverage with minimum limits of $4,000,000, and that Howell and Sanyo be named as additional insureds. (*Id.* ¶ 4.) According to the contract, the insurance was to be primary. (*Id.* ¶ 5.)[3] During this period, Tiffiny held a primary liability insurance policy with limits of $1,000,000 per occurrence for bodily injury and property damage liability ("Liberty Primary Policy") and an excess liability policy with limits of $5,000,000 ("Liberty Excess Policy"). (Liberty's LR 56.1(a)(3) ¶¶ 7-8.) Howell and Sanyo were made additional insureds under the Liberty Primary Policy and the Liberty Excess Policy. (*Id.* ¶ 9.) At this time, Howell was insured under a commercial general liability policy issued by Tokio with limits of $1,000,000 per occurrence for bodily injury ("Tokio Primary Policy"). (*Id.* ¶ 5.) Sanyo was an additional insured under the

---

[3]Liberty denies this in its Response to Tokio's Statement of Facts, but it does not cite affidavits, parts of the record, or other supporting materials in support of its denial. In accordance with Local Rule 56.1(b)(3)(A), the paragraph is deemed admitted. The Court also notes that the agreement between Howell and Tiffiny states: "Coverage is to be endorsed to reflect that insurance is to be primary for the Contractor, Owner, Construction Manager and all other indemnities named in the Contract." (Tokio's LR 56.1(b)(3)(B) Stmt., Ex. C, Form of Agreement Between Contractor and Subcontractor, Rider No. 6 ¶ (B)(8).)

Tokio policy. (*Id.* ¶ 6.)

Henry and Barbara Adamczewski sued Sanyo and Howell in the Circuit Court of Cook County, Illinois, and sought damages for injuries or damages allegedly sustained by Henry Adamczewski on March 12, 1994 at the Sanyo construction site. (*Id.* ¶ 10.) Howell and Sanyo each selectively tendered the complaint to Liberty. (Tokio's LR 56.1(a)(3) ¶¶ 7, 18-19.) Howell and Sanyo notified Tokio that they did not want Tokio to defend or indemnify them and instructed their attorney, Robert C. Moore, to ensure that the Tokio Primary Policy was not triggered. (*Id.* ¶¶ 9-11.)[4] Mr. Moore sent a letter to Tiffiny, demanding defense and indemnity in the lawsuit. (*Id.* ¶ 12.) Liberty accepted Howell's and Sanyo's tender of defense. (*Id.* ¶ 20.) Liberty did not send a reservation of rights letter to Howell's and Sanyo's attorney. (*Id.*) Liberty provided a defense to Howell and Sanyo under the Liberty Primary Policy. (Liberty's LR 56.1(a)(3) ¶ 11.) Liberty demanded that Tokio contribute under its primary policy issued to Howell towards the settlement amount of $1,200,000 to settle the Adamczewskis' lawsuit. (*Id.* ¶ 12.) Tokio refused, claiming it was not responsible under its policy to pay any sum to settle the Adamczewskis' lawsuit. (*Id.*) Prior to trial, Liberty settled the Adamczewskis' lawsuit for $1,200,000 without contribution from Tokio. (*Id.* ¶ 13.)

---

[4]Although Liberty denies these allegations, the only evidence it cites in support of its denials is the August 22, 2001 letter attached as Exhibit 1 to Liberty's Response to Tokio's Statement of Facts. The Court has found that the letter is not sufficiently authenticated and cannot be taken as true for the purpose of ruling on the motions for summary judgment. Even if the letter were admitted, however, it is not sufficient to establish a genuine issue of material fact as to whether Howell and Sanyo tendered to Tokio. It establishes only that Tokio had an open file on the Adamczewski lawsuit and was monitoring the progress of the case. No reasonable jury could find in Liberty's favor based on this scant evidence. In the absence of support for Liberty's disagreement, Tokio's allegations are deemed admitted in accordance with Local Rule 56.1(b)(3)(A).

Liberty brought this action for a declaration of the respective obligations of Liberty and Tokio to Howell and Sanyo to provide indemnity in the settlement. (Compl. ¶ 1.) On the basis of equitable and contractual subrogation and equitable contribution, Liberty seeks reimbursement for $200,000 it paid to indemnify Sanyo and Howell. (*Id.* ¶ 33.) The parties agree that jurisdiction and venue are proper pursuant to 28 U.S.C. § 1332(a)(2) and 28 U.S.C. § 1391(a)(2). (Liberty's LR 56.1(a)(3) ¶¶ 3-4.)

## **DISCUSSION**

In reviewing cross-motions for summary judgment, the evidence is viewed in the light most favorable to each non-moving party; summary judgment in favor of one party is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hoseman v. Weinschneider,* 322 F.3d 468, 473 (7th Cir. 2003). An issue of fact is genuine only if a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

In the present case, the parties dispute whether the limits of $1,000,000 under the Liberty Primary Policy were reached on behalf of Howell and Sanyo. Neither party has produced sufficient evidence to determine the matter for purposes of summary judgment. Liberty's motion for summary judgment is therefore denied.

Tokio raises three grounds on which it may be entitled to summary judgment regardless of whether Liberty has reached the limits of its primary policy on behalf of Howell and Sanyo: (1) Howell and Sanyo selectively tendered to the Liberty Excess Policy; (2) the contract between Howell and Tiffiny stipulating that Tiffiny will provide $4,000,000 in primary coverage is

incorporated into Tiffiny's insurance policies with Liberty; and (3) Liberty cannot recover from Tokio because Howell and Sanyo did not tender to Tokio or, alternatively, did not fulfill the notice condition of the Tokio policy.

The parties' Local Rule 56.1 statements establish that Howell and Sanyo selectively tendered the Adamczewskis' complaint to Liberty and instructed Tokio not to involve itself. An insured has the right to tender defense of an action to one insurer alone, even when the policy of that insurer has an "other insurance" clause requiring contribution from other applicable insurance. *John Burns Constr. Co. v. Ind. Ins. Co.*, 727 N.E.2d 211, 217 (Ill. 2000). In *John Burns Construction Co. v. Indiana Insurance Co.*, the "other insurance" clause said "If other valid and collectible insurance is available . . . , our obligations are limited . . . ." *Id.* at 214. The court found that where the insured had declined to invoke another policy, that insurance was not "available" and would not limit the first insurer's obligation. *Id.* at 217. However, the Liberty Excess Policy is a "true excess" policy, not a primary policy which may become excess by virtue of an "other insurance" clause. The only case law on whether an insured can choose to tender to a true excess policy before a primary policy appears to be an unpublished case in the Chancery Division of the Circuit Court of Cook County: *Pacific Insurance Co. v. Cincinnati Insurance Co.*, No. 00 CH 9376 (Mar. 29, 2002).[5] Tokio argues that the case is not controlling because it is unpublished but does not cite a rule barring its use as persuasive authority. If the court issuing a decision has no rule limiting its precedential value, the decision may be given whatever weight its reasoning warrants. *Aetna Cas. & Sur. Co. v. Kerr-McGee Chem. Corp.*, 875 F.2d 1252, 1255 n.2

---

[5]A copy of the *Pacific* opinion is attached to Liberty's brief in support of its motion for summary judgment.

12

(7th Cir. 1989).

In *Pacific*, the court relied on *New Hampshire Insurance Co. v. Hanover Insurance Co.*, 696 N.E.2d 22 (Ill. App. Ct. 1998), and *American Country Insurance Co. v. Hanover Insurance Co.*, 689 N.E.2d 186 (Ill. App. Ct. 1997), cases in which a subcontractor's umbrella policy was found to be excess to the general contractor's primary policy. Tokio argues that these cases are distinct from the present case because they do not involve selective tender. (Tokio's Am. Mem. Law Opp'n. Liberty's Mot. Summ. J. at 8.) However, the *Pacific* court ruled that selective tender applies only to concurrent coverage for the same risk, and excess and primary policies do not cover the same risk. *Pacific*, No. 00 CH 9376 (citing *Chi. Hosp. Risk Pooling Program v. Ill. Med. Inter-Ins. Exch.*, 758 N.E.2d 353 (Ill. App. Ct. 2001); *Home Indem. Co. v. Gen. Accident Ins. Co. of Am.*, 572 N.E.2d 962 (Ill. App. Ct. 1991); *Ill. Emcasco Ins. Co. v. Cont'l Cas. Co.*, 487 N.E.2d 110 (Ill. App. Ct. 1985)). In *Chicago Hospital Risk Pooling Program v. Illinois Medical Inter-Insurance Exchange*, which concerned the application of the selective tender rule to a self-insurance retention trust, the court found that there must be a right to recovery before an insured can selectively tender to an insurer. 758 N.E.2d at 361. The Liberty Excess Policy limits the insureds' right to recovery to amounts above the retained limit. (Liberty's LR 56.1(a)(3) Stmt., Ex. E, Policy TH1-141-403362-0339 § I, ¶ 1.) The retained limit is defined as the amount of coverage provided by underlying policies–here, the Liberty Primary Policy–plus "all amounts payable under other insurance," which is defined as "any other valid and collectible insurance which is available to the insured." (*Id.* § IV, ¶¶ 6 & 10.) The Liberty Primary Policy provided $1,000,000, and the Tokio Primary Policy was valid and collectible insurance available to Howell and Sanyo in the amount of $1,000,000. (Liberty's LR 56.1(a)(3) Stmt., Ex. C, Daily Report

13

Decls.) The retained limit for the Adamczewski lawsuit was therefore $2,000,000–greater than the settlement amount. According to the terms of the policy agreement, Howell and Sanyo did not have a right to recover under the Liberty Excess Policy, so they could not selectively tender to it.

Tokio next argues that the contract between Tiffiny and Howell, in which Tiffiny agreed to provide primary insurance with limits of $4,000,000 for Howell and Sanyo, is incorporated into Liberty's insurance policy. (Tokio's Am. Mem. Law Opp'n Liberty's Mot. Summ. J. at 10.) Tokio cites *Mobil Oil Corp. v. Maryland Casualty Co.*, 681 N.E.2d 552, 559 (Ill. App. Ct. 1997), to support its position that where an insurer acknowledges providing insurance pursuant to a contract between the insured and a third party, the contract is incorporated into the policy. The cases on which *Mobil Oil* relies reason that where a policy explicitly extends coverage to liabilities arising from a contemplated agreement, that agreement so far as it is incorporated into the insurance contract must be construed with the policies and endorsements to determine the parties' intentions. *Occidental Fire & Cas. Co. v. Int'l Ins. Co.*, 804 F.2d 983, 990 n.3 (7th Cir. 1986); *Cont'l Nat'l Am. Ins. Co. v. Aetna Life & Cas. Co.*, 542 N.E.2d 954, 957 (Ill. App. Ct. 1989); *Truck Ins. Exch. v. Liberty Mut. Ins. Co.*, 428 N.E.2d 1183, 1185 (Ill. App. Ct. 1981). Howell and Sanyo were made additional insureds under the Liberty Primary Policy pursuant to an endorsement that states: "Who is insured is amended to include as an insured any person or organization for whom you have agreed in writing to provide Liability insurance." (Liberty's LR 56.1(a)(3) Stmt., Ex. D, Policy TB7-141-403362-0239, § II.) The Liberty Excess Policy defines "insured" to include "[a]ny other insured included in or added to an underlying policy; but not for broader coverage than is available to such insured under the underlying policy." (*Id.*, Ex. E, Policy TH1-141-403362-0339, § II, ¶ 2(e).) The policy continues:

14

> However, if such other insured is so included or added pursuant to written agreement to provide insurance, then this policy applies only to the scope of coverage and limits of insurance required by such written agreement. In no event will coverage for such other insured exceed the scope of coverage or limits of insurance afforded by this policy.

(*Id.*) The language of the Liberty Excess Policy explicitly limits the incorporation of a third-party written agreement. The scope of the policy cannot be expanded to require Liberty to provide $4,000,000 of primary coverage as specified in the agreement between Tiffiny and Howell.

Liberty is not obligated to indemnify Howell and Sanyo for amounts in excess of $1,000,000 to settle the Adamczeski lawsuit. The record is insufficient to support a finding of fact as to whether Liberty reached the limits of its primary policy to indemnify Howell and Sanyo in the Adamczewski suit. However, Tokio raises another issue that would preclude a judgment for Liberty; Tokio argues that it cannot be obligated to indemnify Howell and Sanyo because they did not tender the lawsuit to Tokio. Alternatively, Tokio argues that Howell and Sanyo did not comply with the notice provision of the Tokio Primary Policy.

Tokio is correct; in Illinois, coverage cannot be triggered by a rival insurer. *John Burns*, 727 N.E.2d at 217; *Alcan United, Inc. v. West Bend Mut. Ins. Co.*, 707 N.E.2d 687, 693 (Ill. App. Ct. 1999); *Bituminous Cas. Corp. v. Royal Ins. Co. of Am.*, 704 N.E.2d 74, 79 (Ill. App. Ct. 1998). An insured has the right to determine whether it wishes to invoke its right to coverage. *Alcan*, 707 N.E.2d at 693. Only the insured or someone acting at the specific request of the insured can tender and trigger coverage. *Bituminous*, 704 N.E.2d at 79. Tokio alleged that Howell and Sanyo instructed Tokio that they did not want Tokio to defend or indemnify Sanyo or Howell, citing for support the affidavit of Marsha A. Lee, a Tokio claims supervisor. (Tokio's LR 56.1(a)(3) ¶ 9.) Liberty denied the allegation, but it cited for support the August 22, 2001 letter from Mark

15

FitzGerald, which was not properly authenticated and has been stricken—and which is, moreover, insufficient to establish a genuine issue of material fact as to whether Howell and Sanyo instructed Tokio not to defend or indemnify them in the Adamczewski lawsuit even if it were admissible. (Liberty's LR. 56.1(b)(3)(A) ¶ 9.) In accordance with Local Rule 56.1(b)(3)(A), Tokio's statement of fact has been deemed admitted. There is insufficient evidence in the record to allow a reasonable jury to find that Howell and Sanyo tendered the Adamczewski lawsuit to Tokio. Tokio is entitled to judgment as a matter of law that Liberty is not entitled to recover any amount from Tokio to indemnify Howell and Sanyo in the Adamczewski lawsuit. Tokio's motion for summary judgment is therefore granted.

## CONCLUSION

For the reasons set forth above, the Court denies Tokio's motion to strike [doc. no. 35], denies Liberty's motion for summary judgment [doc. no. 22], and grants Tokio's motion for summary judgment [doc. no. 24]. This case is hereby terminated.

**SO ORDERED**  ENTERED: 9/21/04

HON. RONALD A. GUZMAN
**United States Judge**